And our last case this morning is Francis versus the United States. All right. Mr. Can you hear me? Yes, I can your honor. All right, you may proceed whenever you're ready. Thank you. May it please the court. My name is Bill Tice. I represent the petitioners in this appeal. This has been very lengthy litigation at all stages. But at this point the issue has been winnowed down to harmless error. The government admits that conspiracy is not a predicate offense for 924 C charged, but it disputes whether or not there was harmless error. The Supreme Court and in this court have emphasized that the government is the one that has the risk of non-persuasion on this issue of harmless error. And just for a moment. I want to clear up what might possibly be a distraction and discussing O'Neill in the opening brief. I got it right in the reply brief on pages 4 and 5. I got a little bit off the rails and suggesting that petitioner in state prisoner cases would have the risk of non-persuasion and that's wrong. And more importantly, it doesn't detract from O'Neill, which was very careful to say that the government has the risk of non-persuasion. It's certainly gone along with that. This trial involved a very unusual set of charges and instructions. We're talking about count six. That's the only one on which we've been given a certificate of appeal ability because the court has already ruled that a substantive Hobbs Act offense is a crime of violence. Count six was based on either count three, which was an attempted Hobbs Act robbery or count five, which was a civil rights conspiracy. But it was more complicated than that because the judge also told the jury that in deciding count three, which of course would then have some play for count six, the jury could rely on count one, which was a Hobbs Act conspiracy. We're back to conspiracy again, or the civil rights conspiracy that was found in five. The government, in trying to sustain its burden or avoiding the risk of non-persuasion, really uses the wrong test. It says that this court should ask whether there was enough evidence to convict on count six using count three. Well, that completely ignores what this court has said in Turner and in similar cases because in Turner, the court said that if the evidence would clearly satisfy either one of the theories of mail fraud, then the error could be harmless. But in this case, the jury in looking at count six was presented with alternative theories, but they were actually inconsistent. We've got robbery or attempted robbery, which involves the use of force. And then this civil rights conspiracy, which was the indictment made some references to robbery, but it also made references to theft, that the defendants were stealing people's property and keeping it away from them. And that was depriving citizens of their right to due process. And robbery and theft are two entirely different concepts. If I steal from someone, I don't rob them. And that's the problem that the government has, and one that they have not really surmounted. And if it were just a case of, you know, count three robbery and count five civil rights, they're inconsistent. We say that that would be an error that was harmful. But as I pointed out earlier, it's much more complicated than that because count three does not rest on a straight up theory of robbery. It's got all these other alternatives. It's got three alternatives, two of which rest on conspiracy. And then one of those conspiracies was a conspiracy involving theft, not robbery. As I said in the opening brief, the government had a real problem with count six. They knew at the end of this encounter that the money was gone. Somebody stole it. Nobody really disputes that. But when the defendants stopped the victims and claimed to be arresting one of them, they never said anything to anybody about we want your money. We know you get money. This is a stick up. It was just this bogus encounter saying, oh, we got an arrest warrant. And then the undercover police officer is told, oh, you can go on your way. And it's only after he leaves and starts checking around in his car that he realizes the money is gone. And so that's why the government really desperately needed this very convoluted theory in the indictment. They needed the Pinkerton instruction to cover that problem. They couldn't prove that there had been any use of force or threatened force in an effort to bring home to the victim. Hey, you'd better turn your money over or else. The government in setting this thing up knew that these defendants wanted to get the money. And in fact, the plan sort of worked out the way the government planned it. The defendants got the money, but they did not use any force or threats of force. That is really where we're at at this point. The government has made some comments about procedural default. I think our brief deals with those unless the court has some specific questions. I'm not sure how specific it is, Mr. Tice, but I would have thought that in an encounter between a coercive encounter between police and civilians, threat of force is always implicit. Well, yes, your Honor. But there's the second part of it is that the force has to have some impact on the victim handing over the money. Yes, they, you know, they stop the car. They're cops. They've got guns. There is some use of force there, but nobody ever says to the court, do you have money? And that's what made it a theft, not a robbery. And that's why robbery surely doesn't require language, does it? Oh, no, nobody suggests that. But it's whatever it is, whether it's language, whether it's actions, whether it's the milieu in general, it still has to be tied to the victim surrendering his money. Now, the undercover cop, of course, he does absolutely nothing. He's hoping that the money will be missing, but we can't look at it from that standpoint. We have to be looking at it from the standpoint of what effect does their conduct have on the prototypical victim? And there's nothing that they say or do that would put a victim who's not planning a sting in the position of saying, oh, I'd better give over my money. Is it robbery to, in essence, aim an implicit threat of force at a victim while you go through his luggage and then take the money out to keep him from interfering with you? It could be. How is this different? Because here the so-called victim doesn't even know. Well, it's a little bit hard to figure out why it's attempt. Classically, robbery requires an unwilling victim. And so there's all these old common law cases where the victim is a setup and the courts say that's not really robbery because the victim knew this was going to happen and wanted this to happen. So I think that it was a very conscious choice to say this is an attempted robbery in order to get around that doctrine. And unlike the person who's being made to stand there while they go through his luggage where it's being impressed upon him. Hey, we're about to take your money. This was very different where he's not able to see what they're doing. He's not able to make any protests. And in fact, they were not directing their activities towards him. They were directing their activities towards the passenger in his car saying, we know that there's a warrant out for you. Thank you. All right. Thank you very much. May it please the court, Deborah Bonamici on behalf of the United States. Your Honor, the defendant's challenged to his conviction on count six based on the instruction that provided the jury with with the option of predicating the 924 C count on the civil rights conspiracy as well as the attempted Hobbs Act robbery is it fails because that instruction did not have a substantial and injurious effect on the determination of the defendant's guilt. The defendant argues that there's no way to know which predicate the jury relied upon and that that that's grounds for granting relief on this on the second successive 2255 here, but that's incorrect. The defendant's suggestion basically is that the same standard should apply in this context as would apply to a case on direct review where the where the argument was made to the district court during the trial. Obviously that did not occur. And in fact, this was raised for the first time on the second successive 2255. We we're not saying that the we're not arguing that there's enough evidence to support a conviction on both that the civil are using both the civil rights conspiracy and the attempted robbery as predicates. What we're saying is that the it's nearly impossible on this record to believe that the that the jury would have found that the defendant guilty on the 924 C charge without finding that the defendant or the that the defendant's 924 C charge was predicated on the on the robbery. I mean, this was this is the robbery where the where the firearms were brandished. I mean it it just it defies reason to think that that's what they may have thought there's no there's no daylight between as a factual matter or even as a legal matter here because the the civil rights charge may have included the robbery and did include the robbery was based on the robbery. But in this context on count six, it was Co is extensive with the robbery. In other words, this is this is what was being the brandishing happened during the course of the robbery. So the case law indicates that that is how you analyze a Yates problem. And in the context that we have here in a second successive 2255. We look we apply this substantive or this substantial injurious tap and an injurious test. We would say in responding to the reply brief the defendant's reply brief that we do not read O'Neill in the manner that the in our view. I don't in our view O'Neill specifically States. I don't know. It's our view. I mean O'Neill says explicitly that it's better just to look at the quantum of evidence does is there looking at the record does the judge believe that the air the claimed air had a substantial injurious effect on the dirt the determination of the jury's verdict. It doesn't it doesn't it in fact it argues against this idea of trying to measure this this type of analysis based on who bears the burden of proof. So it is it is whether it and also it specifically States the court explicitly states in that opinion that the focus of the opinion is on the narrow circumstances of a of a judge a so it's not necessarily it's not necessarily certain that there's been a substantial and injurious effect but has grave doubt about that fact and so there so the question is will will the person will the the assignment of the burden of proof be a tiebreaker in that context. This isn't such a case. This is a case where corrupt police officers conducted a or attempted robbery armed robbery branching firearms to to guess to steal from the defendant or being from the victim but it is a Hobbs Act robbery attempted Hobbs Act robbery. That's what happened here to to argue that the jury would have ignored that based on the jury instructions that were presented in this case really doesn't it really doesn't make any sense. This is a case where it is clear from the nature of the offense and the nature of the 924 C conduct that is highly unlikely. I would say nearly impossible that the jury would have based its decision on a finding that the defendant committed the 924 C offense based solely on the civil rights conspiracy and not on the attempted robbery and as for the idea that the civil rights conspiracy was talked about stealing theft as well as armed robbery. I mean, that's not what happened in the attempted armed robbery that was that the jury was directed to consider that's just not what was going on there. So we think that this is a case where there's been no substantial and injurious effect and therefore the district court's decision should be affirmed. All right. Thank you very much. Mr. Tice. You had used all your time. If you have any closing thoughts, you may have another minute. Thank you. Honor the government wants to pursue sort of a free-firm inquiries to what a reasonable jury might have have done the problem with the government's position is that this court in Turner has said otherwise this court in Turner has said focus on the alternative theories. So we're really looking at among other things the elements of the alternatives and in this is a case where the alternatives have very different elements. Perhaps the same evidence could be introduced at a trial of either one of those alternatives, but when you try the alternatives together. Then you've got a problem when you tell the jury use either one of those alternatives and it turns out that one of those alternatives is is legally defective. So there's a clear legal dispute here. And I just want to make sure that I flagged that for the court. Otherwise, thank you very much for your attention. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement and the court will be in recess.